**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GRAHAM ROGER-LEE DE-LUIS-CONTI,      )   No. C 05-2245 SBA (pr)
                                     )
                    Petitioner,      )   **ORDER DENYING PETITION FOR**
                                     )   **WRIT OF HABEAS CORPUS**
v.                                   )
                                     )
M. S. EVANS, Warden,                 )
                                     )
                    Respondent.      )
_____   )

## INTRODUCTION

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 concerning his 2000 conviction in the Napa County Superior Court. Respondent Warden Teresa A. Schwartz opposes the petition. Petitioner filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

## BACKGROUND

### I.   Case History

On June 29, 2000, the Napa County District Attorney charged Petitioner with three violations of California Penal Code § 136.1(c)(1), dissuading a witness by force or threat (counts 1, 13, and 17); two violations of Penal Code § 236, false imprisonment by violence (counts 3 and 28); one violation of Penal Code § 269(a)(1), aggravated sexual assault upon a child under the age of 14 years, predicated on a violation of Penal Code § 261(a)(2), rape (count 10); one violation of Penal Code § 269(a)(5), aggravated sexual assault upon a child under the age of 14 years, predicated on a violation of Penal Code § 289(a), forcible penetration with a foreign object (count 24); six violations of Penal Code § 288(b)(1), performing a lewd act by force upon a child under the age of 14 years (counts 11, 14, 15, 16, 25, and 26); ten violations of Penal Code § 288(c)(1), performing a lewd act upon a child who is 14 or 15 years old by a perpetrator at least ten years older than the child (counts 4, 5, 6, 7, 8, 19, 22, 29, 32, and 33); one violation of Penal Code § 288a(c), oral copulation by force (count 21); one violation of Penal Code § 289(a), forcible penetration with a foreign object (count 20); six violations of California Health & Safety Code § 11361(a), inducing a minor to use

marijuana (counts 2, 9, 12, 18, 27, and 31); and, three violations of Health & Safety Code § 11361(b), furnishing marijuana to a minor over the age of 14 years (counts 23, 30, and 34).  Due to Petitioner's personal use of a deadly weapon and his tying or binding of the victim, counts 20 and 21 were enhanced under Penal Code § 667.61(a)-(b), (e).

On July 26, 2000, a jury returned a verdict of guilty on all counts except 5, 6, 7, 26, and 28. On June 8, 2001, the trial court sentenced Petitioner to 121 years-to-life in prison and imposed a $5,400 fine.  (Answer at 2, 29.)  The court stayed sentencing on counts 1, 3, 8, 13, 17, 19, 22, 23, 27, and 29 through 34.  (Id. at 2.)  After being appointed new counsel, Petitioner motioned for a new trial, which was denied by the trial court.  On appeal, the California Court of Appeal affirmed the trial court in an unpublished opinion dated September 29, 2003.  (Resp't Ex. A.)  Petitioner filed a petition for review in the California Supreme Court which was denied on January 14, 2004.  (Resp't Ex. C.)  Petitioner filed for a writ of habeas corpus in the California Supreme Court which was denied on April 20, 2005.  (Resp't Ex. D.)

The instant petition was filed on June 2, 2005.  The Court issued an order to show cause on August 3, 2007.  Respondent filed four separate motions for extensions of time which the Court granted over Petitioner's opposition.  Respondent filed an Answer and Memorandum of Points and Authorities in Support of Answer to Petition for Writ of Habeas Corpus on April 14, 2008. Petitioner filed a traverse on May 15, 2008.  The matter has been fully briefed and is now ready for review on the merits.

## II.    **Statement of Facts**

The following facts are drawn from the California Court of Appeal opinion upholding Petitioner's direct appeal of his conviction:

> In broad outline, over the summers of 1995 and 1996 defendant spent a number of weekends alone on his houseboat with his stepdaughters Kara P. and Dawn P., their cousin Jessica Z., and friends Chrystal T. and Shaine W.  Defendant supplied the girls with marijuana and alcohol and engaged in various sexual acts with them . . . .
>
> One summer night in 1995 defendant was on the houseboat with 14-year-old Kara and 13-year-old Chrystal.  The girls had smoked marijuana and gone to sleep in the same bed.  Defendant's sleeping area was on a couch

2

United States District Court

For the Northern District of California

1
2
3

directly across the room. Defendant called to Chrystal, telling her to wake up, come over and masturbate him. She refused. Defendant threatened to injure and rape her, then came over and lay down on his side between the girls. He touched Chrystal's breasts and digitally penetrated her vagina . . . .

4
5
6

Counts 14, 15 and 16 also involve 14-year-old Jessica Z. After smoking marijuana and drinking one night in 1995, defendant told Jessica to sit by him. He pulled her onto his lap and fondled her breasts through her clothing, rubbed her vaginal area through her clothing, then fondled and squeezed her buttocks.

7
8
9

(Resp't Ex. A at 2.) The Court will supply additional facts as necessary in its discussion of the specific issues that are raised in the petition.

10

## DISCUSSION

11

### I.    Legal Standard

12

#### A.    Standard of Review for State Court Decisions

13
14
15
16
17
18
19
20
21
22
23
24
25

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

26

##### 1.    Section 2254(d)(1)

27
28

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim

**United States District Court**
For the Northern District of California

adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, <u>see id.</u> at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, <u>see Van Tran v. Lindsey</u>, 212 F.3d 1143, 1149-50 (9th Cir. 2000), <u>overruled on other grounds</u>, <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-73 (2003).

**a.**      <u>**Clearly Established Federal Law**</u>

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412.  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Id.</u>  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." <u>Mitchell v. Esparza</u>, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. <u>See, e.g.</u>, <u>Stevenson v. Lewis</u>, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. <u>Williams</u>, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." <u>Andrade</u>, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. <u>See id.</u> at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to

4

assess what law is "clearly established." <u>Clark v. Murphy</u>, 331 F.3d 1062, 1070-71 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968 (2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 1999).

### b.    "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413.  A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." <u>Williams</u>, 529 U.S. at 406.  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d).  <u>See</u> <u>Weighall v. Middle</u>, 215 F.3d 1058, 1062 (9th Cir. 2000).

### c.    "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 412-13.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id.</u> at 411; <u>accord</u> <u>Middleton v. McNeil</u>, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).  Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 651 (2004) (per curiam).

5

United States District Court

For the Northern District of California

1   The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-

2   76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging

3   the overruling of Van Tran on this point). After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's
> application of federal law was erroneous, clearly or otherwise. While the
> "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes
> a greater degree of deference to the state courts than [the Ninth Circuit] ha[s]
> previously afforded them.

7   Id. In examining whether the state court decision was unreasonable, the inquiry may require

8   analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th

9   Cir. 2003).

10          **2.    Sections 2254(d)(2), 2254(e)(1)**

11          A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim

12   "resulted in a decision that was based on an unreasonable determination of the facts in light of the

13   evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable

14   determination of the facts occurs where a state court fails to consider and weigh highly probative,

15   relevant evidence, central to a petitioner's claim, that was properly presented and made part of the

16   state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must

17   presume correct any determination of a factual issue made by a state court unless a petitioner rebuts

18   the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

19          Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or

20   situations in which the petitioner challenges a state court's fact-findings based entirely on the state

21   court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence

22   presented for the first time in federal court. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir.

23   2004). In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and

24   2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-

25   finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The

26   intrinsic review requires federal courts to examine the state court's fact-finding process, not its

27   findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part

28

of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1).  Id.  According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error.  See 28 U.S.C. § 2254(e)(1).  "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)."  Taylor, 366 F.2d at 1000.

**3.    Claims Not Considered in a Reasoned State Court Decision**

Where a state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Greene v. Lambert, 288 F.3d 1081, 1088 (9th Cir. 2002).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law.  Himes, 336 F.3d at 853; accord Lambert v. Blodgett, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

**II.    Exhaustion**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  It is undisputed that Petitioner exhausted his direct and collateral state court remedies as to the claims raised in his petition.

**United States District Court**
For the Northern District of California

7

III.    **Legal Claims**

The petition raises six claims:  (1) ineffective assistance of counsel; (2) jury misconduct; (3) insufficiency of the evidence to support the verdict; (4) Vienna Convention rights; (5) prosecutorial misconduct; and (6) judicial misconduct.  The Court deals with each claim below.

Four of these claims were dealt with in Petitioner's motion for a new trial.  The transcript of the hearing on his new trial motion reveals the following facts underlying these claims:

> THE COURT:  Thank you.  Let me make a ruling on the motion for a new trial, and I will just state that I have had the opportunity to review all of documents submitted on behalf of this motion.
>
> This is a case where the Court, having granted the request for receipt of transcripts, has had a chance to review this motion in light of the transcripts being prepared and distributed to everyone, which is an important consideration in a motion of this nature.
>
> And the Court also served as trial judge during the course of the case where I did have the opportunity to observe all the proceedings and all the witnesses.
>
> The Court denies, in all facets, the motion for a new trial.  Issues that the Court is ruling on include all the issues brought before the Court, including but not limited to allegations concerning errors with regard to dates of offenses, allegations regarding credibility of witness issues, sufficiency of the evidence issues.
>
> The Court is very satisfied, after having had an opportunity to consider this motion in light of all the evidence presented at the trial, that the verdicts are supported by substantial evidence.
>
> The Court finds no grounds for the granting of the new trial based on ineffective assistance of counsel, and the Court finds no basis for granting the motion with regard to jury misconduct.
>
> It might be stated that there was another issue which came up today.  The Court finds no prosecutorial misconduct of any kind in this case, and that would include the reference to witness contact.

(Resp't Ex. E, vol. 57, 71-72.)

A.    **Ineffective Assistance of Counsel**

1.    **Background**

Petitioner alleges his trial counsel failed to provide the effective assistance he was entitled to under the Sixth and Fourteenth Amendments to the Constitution.  He asserts numerous grounds for his ineffective assistance of counsel claim:  failure to conduct a pretrial investigation; failure to

United States District Court

For the Northern District of California

1  prevent the sale of the houseboat where the incidents occurred; failure to interview and call character

2  witnesses; failure to present specific character evidence such as the victims' school grades and

3  sexual activity; failure to object to items that "had no significance to the case" (including a police

4  uniform and a collection of badges); failure to raise a particular defense concerning Petitioner's skin

5  condition and the location of scars; and, failure to compel Petitioner and the victims to take lie

6  detector tests.  (Pet. at 13-24.)

7       This claim was raised in Petitioner's motion for a new trial and was rejected by the trial court.

8  Petitioner did not raise this claim on appeal, and the state supreme court denied the claim on habeas

9  review without citation or comment.  Because there is no reasoned state court opinion which

10  discusses the claim, the Court must conduct an independent review of the record to determine

11  whether the California Supreme Court's summary denial of the claim was an unreasonable

12  application of clearly established federal law.  See Himes, 336 F.3d at 853.

13                    **2.    Applicable Federal Law**

14

15       A violation of the Sixth Amendment right to counsel based on a trial counsel's

16  ineffectiveness requires a showing that his or her performance was both deficient and prejudicial.

17  Strickland v. Washington, 466 U.S. 668, 686-93 (1984).

18       To satisfy the deficiency prong, Petitioner must show that counsel's performance fell below

19  an "objective standard of reasonableness" under prevailing professional norms.  Strickland, 466 U.S.

20  at 687-88.  Second, he must establish he was prejudiced by his counsel's deficient performance, i.e.,

21  that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

22  proceeding would have been different."  Id. at 694.  A reasonable probability is a probability

23  sufficient to undermine confidence in the outcome.  Id.

24       In assessing a counsel's performance, the relevant inquiry is not what he or she could have

25  done, but rather whether his or her choices were reasonable.  See Babbitt v. Calderon, 151 F.3d

26  1170, 1173 (9th Cir. 1998).  Where there are indicia of a counsel's tactical reflection on the issue,

27

28  judicial scrutiny of their performance is deferential, with a presumption that their conduct falls

within the wide range of reasonable professional assistance.  See United States v. Palomba, 31 F.3d 1456, 1466 (9th Cir. 1994); see also Strickland, 466 U.S. at 689

The Strickland framework for analyzing ineffective assistance of counsel claims is considered "clearly established federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  See Williams, 529 U.S. at 404-08.

A court should defer to a trial counsel's tactical decisions where: (1) they in fact base trial conduct on strategic considerations; (2) they make an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances.  See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).  The investigation itself must be reasonable for an attorney's tactical decision based on that investigation to be reasonable.  Wiggins v. Smith, 539 U.S. 510, 523-24 (2003).  A court must consider not only the quantum of evidence known to a counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.  Id. at 526-27.  Evidence that the challenged trial conduct resulted from inattention rather than from strategic considerations may also be relevant to the inquiry.  Id. at 524-25; see, e.g., McDowell v. Calderon, 107 F.3d 1351, 1358 (9th Cir.) (no ineffective assistance where counsel's decision to concede guilt of felony murder but contest defendant's intent to kill "best choice from a poor lot"), amended, 116 F.3d 364 (9th Cir.), vacated in part by 130 F.3d 833, 835 (9th Cir. 1997) (en banc).

### 3.    Analysis

Under § 2254(d)(2), the Court must undertake an "intrinsic review" of a state court's fact-finding process under this section's "unreasonable determination" clause.  Taylor, 366 F.3d at 1000.  During the hearing on his new trial motion, the trial court gave Petitioner the opportunity to present evidence as to why his counsel was ineffective.  After the hearing, the trial court found Petitioner had failed to make a sufficient showing that he had been unfairly prejudiced.  Accordingly, the Court finds the factfinding process was intrinsically reasonable.  See id.

Upon finding the state court's factfinding process survives an intrinsic review, the Court turns to the state court's determination of the facts, which is "dressed in a presumption of

United States District Court

For the Northern District of California

1  correctness." Id.  The state court's factual findings are presumed correct under § 2254(e)(1) unless

2  rebutted by clear and convincing evidence.

3        Petitioner has failed to rebut the California Supreme Court's rejection of his Strickland claim

4  with clear and convincing evidence.  The prosecutor's opposition to Petitioner's motion for a new

5  trial solidly outlines the issues:

6

7           In the case at bar, the defendant cannot show that his attorney
            committed any substantive errors, and certainly has not shown "a
8           reasonable probability that, but for counsel's unprofessional errors, the
            result of the proceedings would have been different."  (People v. Cox,
9           supra, 53 Cal.3d at p. 656).  With regard to the defendant's claim that
            there was "no investigation into contacting any witnesses whatsoever"
10          (defendant's motion, page 190, lines 3-4), the People submit that the
            witnesses put forth by the defendant add absolutely nothing to his
11          case.

12           The inadmissible hearsay affidavits completed by Ricky Don Walker,
            Amanda Mischell Paradise-Walker, and Don Walker say nothing but
13          that the defendant was a "nice guy," without addressing any relevant
            issue in the case at bar.
14

15          With regard to the defendant's claim that Ms. Kramer had a conflict of
            interest because of a relationship with the prosecutor, Ms. Kramer and
16          the Court told the defendant of the fact that Ms. Kramer and Mr.
            Hafenstein knew each other.  The Court made a full inquiry of the
17          defendant before trial as to this fact, and the defendant had no problem
            going forward with Ms. Kramer as his attorney.
18

19          The fact of the matter is this:  Ms. Kramer was an excellent advocate
            for her client.  She presented expert testimony as to the handwriting of
20          a diary crucial to the dates of the offenses, as well as calling the
            defendant himself to the stand.  She vigorously cross-examined every
21          prosecution witness, and brought up every relevant point covered by
            the defendant in his motion and more, both on cross-examination and
22          in her closing argument to the jury.  The Court could see, in Ms.
            Kramer's filed documents, her presentation, her argument before and
23          during trial, and her discussions with the Court and counsel in
            chambers that she was exceptionally prepared and ready to contest the
24          guilt of the defendant.
25

26  (Resp't Ex. B., vol. 6 at 1134.)

27        Furthermore, as outlined below, there is nothing in the record that shows Petitioner was

28  prejudiced by his trial counsel's actions.

11

United States District Court

For the Northern District of California

### a.      Failure to Perform a Pre-Trial Investigation

Petitioner's allegation that his counsel failed to conduct a pretrial investigation is contradicted by the record.  It is evident his counsel did extensive investigation prior to trial considering the fact that she called witnesses (including Petitioner) who testified at length.  Counsel also hired a forensic expert to testify as to the handwriting in one of the victims' diaries. Furthermore, as a public defender, Petitioner's counsel had limited resources with which to operate. It was perfectly reasonable for defense counsel, in the exercise of her professional judgment, to investigate some leads and to ignore others.  In fact, it would be inadvisable to investigate every issue suggested to her, given the limited time and resources she possessed.  Additionally, while Petitioner admits he has no legal training, his argument appears to suggest that, rather than trusting her own professional judgment, counsel should have abided by Petitioner's commands.  (Pet. at 58.) Even if Petitioner disagrees with his counsel's decisions, a difference of opinion as to trial tactics does not constitute denial of effective assistance.  See United States v. Mayo, 646 F.2d 369, 375 (9th Cir.), cert. denied, 454 U.S. 1127 (1981).  Therefore, his argument is meritless.

### b.      Failure to Preserve Evidence

Petitioner alleges his defense counsel failed to preserve crucial evidence because she did not prevent the sale of the houseboat where the incidents occurred.  This, Petitioner suggests, prevented "a possible potential meritorious defense being raised." (Pet. at 70.)  The relevant characteristics of the houseboat, however, were preserved in photographs and in a videotape created by law enforcement which Petitioner could have used at trial.  Nevertheless, Petitioner contends this videotape was prejudicial because it was created with a bias towards the prosecution.  (Id. at 81.) Petitioner does not allege any specific part of the boat that was missing from the videotape.  Instead, he vaguely suggests that, but for his inability to access the boat, he could have proved that the alleged acts were "impossible."  Additionally, the petition contains a well-drawn diagram that Petitioner created which also could have been used at trial.  (Id. at 138.)   Based upon the existence of the videotape, photographs, and diagram, as well as Petitioner's failure to allege what specifically was missing from the videotape, the Court finds this argument unavailing.

**c.**    <u>Failure to Interview and Call Witnesses at Trial</u>

Petitioner claims his trial counsel failed to interview and call witnesses that could have changed the outcome of the trial.  (<u>Id.</u> at 68.)  In fact, Petitioner alleges his trial counsel "interviewed no-one [sic] period."  (<u>Id.</u> at 69.)  In support of this allegation, Petitioner points to a post-trial investigation report containing a list of witnesses and the information obtained from them.  (<u>Id.</u> at 69.)  The report states that a number of the witnesses actually testified at trial and were cross-examined by trial counsel.  (<u>Id.</u> at 246.)  None of the witnesses who are on the list had any direct knowledge of the events for which Petitioner was convicted.  Instead, the witnesses would have testified about Petitioner's good character or his behavior towards the victims in other contexts.  For example, Petitioner argues his counsel failed to call Witness Don Walker to testify on his behalf. (<u>Id.</u> at 71.)  Concerning Mr. Walker, the investigation report states:

> Mr. Walker consented to and signed an affidavit . . . produced from interviews with Action.  He is prepared to testify on Mr. Deluis Conti's behalf and expressed disappointment and bewilderment that he was not called upon to testify in the trial, as he closely associated with Mr. Deluis Conti dating back to 1988 and through 1993.  Indeed, he admits living with the Deluis Conti family for six months in 1992.  He worked with the defendant and socially associated with him, as well. During his association with the defendant, he claims to have visited Putah Creek with the Deluis Conti family about six times and even visited Lake Beryessa with his young daughter and the defendant's family.  He . . . claims to have learned of the case via a broadcast news commercial.

(<u>Id.</u> at 246.)  This statement contains very little evidence that has any bearing on the trial whatsoever.  It does not contain any evidence that would have changed the outcome of the trial. While providing character evidence is an important part of many criminal defense strategies, it cannot be said that his trial counsel's failure to call this particular witness (or any of the witnesses in the investigator's report) was "objectively unreasonable" or actually prejudicial to Petitioner. Nevertheless, Petitioner claims the report does not contain all the information Mr. Walker and the other witnesses could have provided.  (<u>Id.</u> at 72-73.)  While this may be true, Petitioner cannot merely rely upon a bare assertion that such information exists.  The record contains no such information.  Therefore, the Court finds no merit in Petitioner's argument.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### d.      Failure to Suppress Evidence

Petitioner alleges his trial counsel failed to suppress the submission into evidence of a police uniform and a badge collection owned by Petitioner.  (Id. at 74-75.)  Given the great length of the trial and the extensive amount of evidence presented, it would be unreasonable to conclude that the admission of two collateral items had any effect upon the jury's overall verdict.  Therefore, the Court finds his trial counsel's conduct was neither objectively unreasonable nor significantly prejudicial to Petitioner.

### e.      Failure to Present Potentially Meritorious Evidence

#### (1)      Skin Condition

Petitioner claims his trial counsel failed to submit evidence concerning a distinguishing medical condition.  (Id. at 75.)  Petitioner alleges his counsel informed him there were insufficient funds to pursue such an investigation.  (Id.)  According to Petitioner, he has "scars all over his body, arms, legs, shoulders, neck, chest, back, buttocks, and all are very clear and visible for all to see." (Id. at 76.)  During trial, the victims stated they knew of no distinguishing marks on Petitioner's body.  Petitioner alleges this conflicting testimony "totally undermines their credibility[,]" and that trial counsel's failure to "persue [sic] this meritorious defense prejudiced the petitioner without any doubt."  (Id.)  As discussed below, a jury's credibility determinations are entitled to near-total deference except in the most exceptional circumstances.[1]  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  The circumstances of this case do not rise to the level of "exceptional" under Bruce. Merely failing to remember the presence of scars on a person's body more than five years after an incident occurred is not so blatant an error as to "totally undermine" the victims' credibility.  (Pet. at 76.)  Therefore, while it might have been helpful had trial counsel provided such expert testimony, the Court finds that his counsel's failure to present it was neither objectively unreasonable, nor sufficiently prejudicial to overturn Petitioner's conviction.

---

[1]  See infra Discussion Part III.C.

14

**(2)    Lie-Detector/Sexual History Evidence**

Finally, Petitioner claims that his trial counsel failed to present evidence of the victims' sexual history and to have them submit to a lie-detector test or hypnosis, thereby prejudicing him at trial.  In California, evidence of victims' sexual activities with others is generally inadmissible at trial.  See Cal. Evid. Code § 1103(c)(1).[2]  Not only that, but even if the victims had been sexually promiscuous individuals, Petitioner's conduct would still have been illegal because they were under the age of consent at the time of the alleged crimes.  Additionally, lie detector results are also inadmissible under California Evidence Code § 351.1(a) unless parties stipulate to the admission of such evidence.[3]  Therefore, Petitioner's arguments concerning sexual history and lie detector evidence also fail.

**f.    Conclusion**

Petitioner's claim rests entirely upon strategic and tactical disagreements he had with his attorney rather than upon any objectively unreasonable conduct.  Furthermore, Petitioner has failed

---

[2]  California Evidence Code § 1103(c)(1) states in pertinent part:

> Notwithstanding any other provision of this code to the contrary, and except as provided in this subdivision, in any prosecution under Section 261, 262, or 264.1 of the Penal Code, or under Section 286, 288a, or 289 of the Penal Code, or for assault with intent to commit, attempt to commit, or conspiracy to commit a crime defined in any of those sections . . . opinion evidence, reputation evidence, and evidence of specific instances of the complaining witness' sexual conduct, or any of that evidence, is not admissible by the defendant in order to prove consent by the complaining witness.

[3]  California Evidence Code § 351.1(a) states in pertinent part:

> Notwithstanding any other provision of law, the results of a polygraph examination, the opinion of a polygraph examiner, or any reference to an offer to take, failure to take, or taking of a polygraph examination, shall not be admitted into evidence in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court, unless all parties stipulate to the admission of such results.

15

United States District Court

For the Northern District of California

to demonstrate that his attorney's alleged errors prejudiced him at trial in any way.  Therefore, the California Supreme Court's rejection of Petitioner's claim was not an unreasonable application of Strickland.  See Himes, 336 F.3d at 853.

### B.    Juror Misconduct

### 1.    Background

Petitioner claims his trial was corrupted by juror misconduct.  (Pet. at 88.)  He makes numerous claims to support his allegation.  First, he suggests the sheer volume of jury instructions, which were "read continuous without any break or explanation," were impossible for any layperson to understand.  (Id.)  Second, he alleges the jury's verdict could not have been based on the evidence because certain parts of the record contain contradictory statements.  Third, he contends a juror's statement, "Yeah, the girls were probably lying, but we convicted him anyway," indicates the jury's verdict was not based upon the evidence.  (Id. at 93.)  Finally, Petitioner argues the guilty verdict returned by the jury on count 29 was inconsistent with the not guilty verdict returned on count 28 and was therefore arbitrary.  (Id. at 88.)

Petitioner originally raised this claim in his motion for new trial, where it was rejected.  Petitioner did not raise this claim on appeal, and the California Supreme Court denied the claim on habeas review without citation or comment.  Because there is no reasoned state court opinion which discusses the claim, the Court must conduct an independent review of the record to determine whether the California Supreme Court's summary denial of the claim was an unreasonable application of clearly established federal law.  See Himes, 336 F.3d at 853.

### 2.    Applicable Federal Law

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors.  U.S. Const. amend. VI; see Irvin v. Dowd, 366 U.S. 717, 722 (1961).  "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." Tinsley v. Borg, 895 F.2d 520, 523-24 (9th Cir. 1990) (internal quotations omitted).  However, the Constitution "does not require a new trial every time a juror has been placed in a potentially

compromising situation." Smith v. Phillips, 455 U.S. 209, 217 (1982).  Due process only requires a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.  Id.

The Court "presum[es] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them."  United States v. Olano, 507 U.S. 725, 740 (1993) (quoting Francis v. Franklin, 471 U.S. 307 (1985)).

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not affirmatively appear on the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson v. Virginia, 443 U.S. 307, 326 (1979).  A jury's credibility determinations are therefore entitled to near-total deference.  Bruce, 376 F.3d at 957.

"A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict . . . . " see Tanner v. United States, 483 U.S. 107, 120-27 (1987) (observing that Federal Rule of Evidence 606(b) is "grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences" and that it "'embodie[s] long-accepted federal law'"); see also Cal. Evid. Code § 1150 (state equivalent of Rule 606(b)).

"Inconsistent verdicts in criminal trials need not be set aside, but may instead be viewed as a demonstration of the jury's leniency."  United States v. Powell, 469 U.S. 57, 64 (1984).

### 3.    Analysis

Petitioner's jury misconduct claim was also raised in his new trial motion.  As stated above, the Court finds the factfinding process concerning the jury misconduct claim was intrinsically

17

1    reasonable.[4]  See Taylor, 366 F.3d at 1000.

2                           **a.    Overabundant Jury Instructions**

3              Petitioner claims the enormous number of jury instructions, coupled with the way they were

4    read to the jury, made it impossible for them to render a proper verdict.  His argument is without

5    merit.  According to clearly established Supreme Court law, jurors are presumed intelligent

6    individuals capable of understanding the proceedings and the instructions given.  See Olano, 507

7    U.S. at 740.  Petitioner's case was complex and required a multi-day jury trial to resolve.  Because of

8    the sheer number of counts in the indictment, a large number of jury instructions was necessary.  The

9    Court provided the jury access to written copies of each instruction during deliberations.  Further,

10   the jurors could have submitted questions to the trial judge to answer any questions they might have

11   had.  No such questions were submitted, and there is no evidence in the record to indicate the jurors

12   failed to comprehend the instructions given to them.  Therefore, Petitioner's claim relating to jury

13   instructions fails.

14

15                           **b.    Insufficient Evidence to Support the Verdict**

16            Petitioner points to several instances in the trial record where the victims' testimony appears

17   to contradict the verdict.  (Pet. at 89-95.)  For example, at one point during Jessica Z.'s testimony,

18   the following exchange occurred:

19

20            Q.    Did any part of the defendant's hand in that position enter any
                   part of your vaginal area?

21            A.    No.

22            Q.    Do you remember at any time during the time you were tied to
                   the pole any touching by the defendant inside your vaginal
23                 area?

24            A.    No.

              Q.    No you don't remember, or No?

25            A.    No, it didn't happen.

26

27   (Id. at 93.)  Count 20 (forcible penetration with a foreign object) required that the victim's vagina

28
              _____

                    [4]  See supra Discussion Part III.A.3.

                                          18

United States District Court

For the Northern District of California

1    actually be penetrated.  Therefore, Petitioner contends that since Jessica Z. testified no such

2    penetration took place, the jury could not have based their verdict upon the evidence presented at

3    trial.[5]  (Id. at 93-94.)

4

5            Despite the evidence pointed out by Petitioner, his claim must necessarily fail.  Under clearly

6    established federal law, the jury's verdict is entitled to "near-total" deference on habeas corpus

7    review.  In Bruce, the Ninth Circuit considered a claim similar to the one presented in this case:

8                Bruce claims that inconsistencies and conflicts in the record throw his
             conviction into doubt.  He first argues that no testimony corroborates
9            that the September 1996 sleepover even occurred (Angela, Amanda,
             and Dawn could only recall the December sleepover); thus, only
10           Catina's testimony establishes that the earlier instance of molestation
             happened.  Because Catina's account of being molested on a bed
11           along-side four other sleeping children is inherently implausible,
             Bruce continues, no rational factfinder could have found him guilty
12           beyond a reasonable doubt on the four counts stemming from the
             September incident.
13
                 Here, Catina cried foul and Bruce denied all.  The jury resolved this
14           paradigmatic credibility contest by determining that Catina was more
             believable.  Except in the most exceptional of circumstances, Jackson
15           does not permit us to revisit such credibility determinations.  And we
             cannot say-despite Bruce's protestations-that Catina's account of the
16           September incident is physically impossible and simply could not have
             occurred as described.  We therefore conclude that a rational trier of
17           fact could have found the essential elements of the crime beyond a
             reasonable doubt.  See Jackson, 443 U.S. at 319, 99 S. Ct 2781; cf.
18           People of the Territory of Guam v. McGravey, 14 F.3d 1344, 1346-47
             (9th Cir. 1994) (upholding conviction for sexual molestation based
19           entirely on the uncorroborated testimony of the victim).
20
21   Bruce, 376 F.3d at 957-58.  The case at hand is no more "exceptional" than the one at issue in Bruce.

22   Petitioner alleges the victims' inability to consistently recall the events surrounding Petitioner's

23   criminal acts casts considerable doubt upon the verdict's reasonableness.  While inconsistent

24   testimony at trial certainly casts doubt upon the credibility of a given witness, on habeas review this

25   _____

26        [5]  It should be noted, however, that later in her testimony, Jessica Z. stated that Petitioner
     stretched open her vaginal opening so he could look inside.  (RT 1093-94.)  Construing the evidence
27   in the light most favorable to the prosecution, a reasonable juror could have found this act satisfied
     the penetration element of count 20.
28

19

Court must assume the jury resolved credibility disputes in favor of the prosecution.  <u>Jackson</u>, 443 U.S. at 326.  Therefore, Petitioner's juror misconduct claim based upon insufficient evidence necessarily fails.

### c.  <u>Improper Juror Statement</u>

Petitioner next claims the verdict should be invalidated based upon a juror's post-trial statement:  "Yeah, the girls were probably lying, but we convicted him anyway."  (Pet. at 93.)

In a related context concerning the same statement, Petitioner asserts the trial court erred in denying his post-trial motions for access to juror's addresses and phone numbers on the ground that he failed to present a <u>prima facie</u> showing of good cause to unseal personal juror information.  The appellate court rejected this claim, stating "The alleged [statement does] not establish a basis in the facts of the law to unseal confidential juror information.  The [statement does] not present a <u>prima facie</u> showing of good cause to unseal personal juror information under the facts presented or under the law."  (Resp't Ex. A at 10-11.)  Additionally, evidence about the effect of a juror's subjective thought processes during deliberation is inadmissible at trial, Fed. R. Evid. 606(b), and is thus inappropriate for a reviewing court to consider on habeas review.  Further, the juror's comment does not suggest the jurors believed that the victims' testimony was entirely or materially false.  Nor does it preclude the possibility they considered the evidence fairly and in accordance with the instructions.  For these reasons, Petitioner's assertion based upon the juror's comment necessarily fails.

### d.  <u>Inconsistent Verdicts</u>

Petitioner also claims his conviction on count 29, for a lewd act upon a child fourteen years or younger, should be vacated because it was contingent upon the actions alleged in count 28, for false imprisonment by violence, for which he was acquitted.  This claim is legally unsound.  Under clearly established Supreme Court law, inconsistencies within a verdict are insufficient to support a motion for a new trial.  <u>Powell</u>, 469 U.S. at 64.  Instead such verdicts are considered an exercise of jury leniency.  <u>Id.</u>  In the present case, counts 28 and 29 arise from a series of events where

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Petitioner allegedly handcuffed a victim to a boat, fondled her breasts, and told her he was going to rape her.  There is sufficient evidence in the record to support a conviction on both counts.  Alternatively, the jury could have determined the witness was incredible as to the facts involved in count 28, but was credible as to the facts alleged in count 29.  In any event, the verdict does not rise to the level of misconduct on the jury's part.  Therefore, Petitioner's juror misconduct claim concerning the inconsistency of the verdicts fails.

For the foregoing reasons, the California Supreme Court's rejection of Petitioner's juror misconduct claims was not an unreasonable application of clearly established federal law.  See Himes, 336 F.3d at 853.

### C.    **Insufficiency of the Evidence**

#### 1.    **Background**

Petitioner's next claim is the evidence at trial was insufficient to support the jury's verdict.  The petition contains 124 pages of parsed trial transcripts in which Petitioner points out numerous inconsistencies, forgotten details, and failures of recollection on the part of the victims.  Petitioner contends these inconsistencies are so numerous that no reasonable juror could have found him guilty of the alleged acts.  (Pet. at 101-225.)  For example, Petitioner provides a diagram he created based upon the victims' testimony.  (Id. at 158.)  The diagram provides a re-enactment of the series of events that led up to counts 3, 4, and 19 (lewd acts upon a child fourteen years or younger), 20 (forcible penetration with a foreign object), and 21 (oral copulation by force) of the indictment.  The incident involved Petitioner tying the victims together with rope, touching their vaginas with his hands and genitals while he was kneeling on the floor, forcing them to perform oral sex upon him, and threatening them with a butcher knife when they refused to comply.  (RT 678-687, 822-824, 1081-1095.)

Petitioner contends that it would have been impossible for him to make contact with the victims' vaginas with his penis based upon the height differential between the floor and the bench they sat on.  Petitioner also states it would have been impossible, based upon the victims' positions,

21

for them to orally copulate him because of the height differential between their heads and Petitioner's groin area.  (Pet. at 162.)  Petitioner claims these inconsistencies, among others, made it impossible for any reasonable juror to conclude he was guilty.

Petitioner originally raised this claim in his motion for new trial where it was rejected.  He did not raise this claim on appeal, and the state supreme court denied the claim on habeas review without citation or comment.  Because there is no reasoned state court opinion which discusses the claim, the Court must conduct an independent review of the record to determine whether the California Supreme Court's summary denial of the claim was an unreasonable application of clearly established federal law.  See Himes, 336 F.3d at 853.

### 2.    Applicable Federal Law

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  A state prisoner who alleges the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim which, if proven, entitles him to federal habeas relief.  See Jackson, 443 U.S. at 321, 324.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992), cert. denied, 510 U.S. 843 (1993).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  See id. (quoting Jackson, 443 U.S. at 319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  See Jackson, 443 U.S. at 324; Brown, 525 F.3d at 794; Payne, 982 F.2d at 338; Miller v. Stagner, 757 F.2d 988, 992-93 (9th Cir.), amended, 768 F.2d 1090 (9th Cir. 1985), cert. denied, 475 U.S. 1048, and cert. denied, 475 U.S. 1049 (1986); Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir.), cert. denied, 469 U.S. 838 (1984).

On habeas review, a federal court evaluating the evidence under <u>In re Winship</u> and <u>Jackson</u> should take into consideration all of the evidence presented at trial.  <u>LaMere v. Slaughter</u>, 458 F.3d 878, 882 (9th Cir. 2006) (in a case where both sides have presented evidence, a habeas court need not confine its analysis to evidence presented by the state in its case-in-chief).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not affirmatively appear on the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  <u>Bruce</u>, 376 F.3d at 957.  Except in the most exceptional of circumstances, <u>Jackson</u> does not permit a federal habeas court to revisit credibility determinations.  <u>See id.</u> (credibility contest between victim alleging sexual molestation and defendant vehemently denying allegations of wrongdoing not a basis for revisiting jury's obvious credibility determination); <u>see also</u> <u>People v. McGravey</u>, 14 F.3d 1344, 1346-47 (9th Cir. 1994) (upholding conviction for sexual molestation based entirely on uncorroborated testimony of victim).

### 3.    <u>Analysis</u>

Petitioner's insufficiency of the evidence claim was also raised in his new trial motion.  As stated above, the Court finds the factfinding process concerning the jury misconduct claim was intrinsically reasonable.[6]  <u>See</u> <u>Taylor</u>, 366 F.3d at 1000.

Petitioner claims the victims were so inconsistent they were not a reliable or credible source of evidence.  On habeas review, the Court may not re-weigh the evidence.  <u>Jackson</u>, 443 U.S. at 326. Instead, it must presume that the jury resolved conflicts in evidence, including credibility determinations, in the prosecution's favor.  The Court does not find Petitioner's case presents the exceptional circumstances required for a deeper inquiry into the evidence presented at trial.  While the victims' testimony is certainly inconsistent at times, their testimony is also largely corroborative of a coherent chain of events, despite the fact it had been more than four years since the events had

---

[6]  <u>See</u> <u>supra</u> Discussion Part III.A.3.

23

occurred.  Given the high level of deference this Court must grant to the jury's fact-finding, it is reasonable to conclude a rational jury panel could have believed the victims' story beyond a reasonable doubt.  Furthermore, the trial court stated it was "very satisfied, after having had an opportunity to consider [Petitioner's new trial] motion in light of all the evidence presented at the trial, that the verdicts [were] supported by substantial evidence."  (Resp't Ex. E, vol. 57 at 71.) Therefore, based upon a review of all the evidence in the record in a light most favorable to the prosecution, the Court finds a reasonable jury could have found Petitioner guilty of all counts. Petitioner's insufficient evidence claim fails.

Accordingly, the California Supreme Court's rejection of Petitioner's insufficient evidence claim was not an unreasonable application of clearly established federal law.  See Himes, 336 F.3d at 853.

### D.    Prosecutorial Misconduct

#### 1.    Background

Petitioner claims prosecutorial misconduct deprived him of his constitutional rights. Petitioner alleges that the prosecution withheld potentially exculpatory evidence, such as a houseboat, a silver "air pistol," and an audio tape recording; instructed a witness, Matt Ramsey, to testify falsely; and, intimidated a victim, Jessica Z., to testify falsely.  (Pet. at 80-86.)

Petitioner originally raised this claim in his motion for new trial where it was rejected.  He did not raise this claim on appeal, and the state supreme court denied the claim on habeas review without citation or comment.  Because there is no reasoned state court opinion which discusses the claim, the Court must conduct an independent review of the record to determine whether the California Supreme Court's summary denial of the claim was an unreasonable application of clearly established federal law.  See Himes, 336 F.3d at 853.

#### 2.    Applicable Federal Law

Prosecutorial misconduct is a cognizable claim in federal habeas corpus review.  The appropriate standard of review is a narrow one of due process and not a broad one of the exercise of

**United States District Court**
For the Northern District of California

supervisory power.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." See id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("The touchstone of due process analysis in cases of alleged prosecutorial misconduct is fairness of trial, not culpability of prosecutor.").

In Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Id. at 87.  A defendant cannot claim a Brady violation if he was "aware of the essential facts enabling him to take advantage of any exculpatory evidence."  United States v. Shaffer, 789 F.2d 682, 690 (9th Cir. 1986) (citing Brown v. United States, 582 F.2d 197, 200 (2d Cir.), cert. denied, 439 U.S. 915 (1978)).

When a prosecutor obtains a conviction by the use of testimony which he or she knows or should know is perjured, it has been consistently held that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury.  See United States v. Agurs, 427 U.S. 97, 103 (1976).  The same result obtains when the prosecutor, although not soliciting false evidence, allows it to go uncorrected when it appears.  Napue v. Illinois, 360 U.S. 264, 269 (1959); cf. United States v. Alli, 344 F.3d 1002, 1006-08 (9th Cir. 2003).

If the prosecutor knows that his or her witness has lied, he or she has a constitutional duty to correct the false impression of the facts.  United States v. LaPage, 231 F.3d 488, 492 (9th Cir. 2000). This duty is not discharged merely because defense counsel knows, and the jury might figure out, that the testimony is false.  Id.  No lawyer, prosecutor, or defense counsel, civil or criminal, may knowingly present lies to a jury and then sit idly by while opposing counsel struggles to contain this pollution of the trial.  Id. (reversing conviction where a prosecutor failed to correct false testimony during trial, despite conceding during closing argument that the witness had lied).

Prosecutors will not be held accountable for discrepancies in testimony where there is no evidence from which to infer prosecutorial misconduct and the fairness of the trial was not

25

**United States District Court**
For the Northern District of California

materially affected.  See United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir. 1995) (no evidence of prosecutorial misconduct where discrepancies in testimony could as easily flow from errors in recollection as from lies).  Petitioner must establish a factual basis for attributing knowledge to the government that the testimony was perjured.  See Morales v. Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004).

In sum, to prevail on a claim based on Agurs/Napue, the petitioner must show that (1) the testimony or evidence was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material.  United States v. Zuno-Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue, 360 U.S. at 269-71).  "Material" means that there is a reasonable likelihood that the false evidence or testimony could have affected the judgment of the jury.  Morris v. Ylst, 447 F.3d 735, 743 (9th Cir. 2006).

### 3.   **Analysis**

Petitioner's prosecutorial misconduct claim was also raised in his new trial motion.  As stated above, the Court finds that the factfinding process concerning the jury misconduct claim was intrinsically reasonable.[7]  See Taylor, 366 F.3d at 1000.

### a.   **Withheld Exculpatory Evidence**

### (1)   **Houseboat**

Petitioner claims that the prosecution illegally allowed the houseboat where the incidents took place to be sold and disassembled before the defense was allowed to examine it.  If such an investigation had taken place, Petitioner alleges he could have proved his accusers' allegations "were totally fabricated."  (Pet. at 81.)  The houseboat was preserved in a videotape and photographs which were made available to the defense at trial.  See supra Discussion Part III.A.3.  Nevertheless, Petitioner claims these items were created with a bias towards the prosecution.  As stated previously, however, Petitioner does not allege any specific part of the boat that was missing from the videotape.

---

[7]  See supra Discussion Part III.A.3.

26

United States District Court

For the Northern District of California

1    Instead, he vaguely suggests that, but for his inability to access the boat, he could have proved the

2    alleged acts were "impossible."  It should also be noted Petitioner likely could have obtained the

3    boat's dimensions by subpoenaing the schematics from its manufacturer.  Based upon the existence

4    of the videotape, photographs, and a well-drawn diagram, as well as Petitioner's failure to allege

5    what specifically was missing from the videotape, the Court finds, under <u>Brady</u>, there is no

6    reasonable likelihood the jury's judgment would have been affected in any significant way if the

7    prosecutor had not allowed the boat's sale.

8                                       **(2)      "Air-Pistol"**

9

10        Petitioner contends the prosecution withheld a silver "air-pistol."  In making their case

11   against him, Petitioner claims that the prosecution referred to a "silver gun" which was used to

12   threaten the victims.  This gun, Petitioner claims, was actually a "harmless air-pistol" which the

13   prosecution withheld from evidence and hid from the defense because it "would have destroyed their

14   claim and the jury would have seen that what was alleged simply couldn't have happened."  (<u>Id.</u> at

15   84.)

16        The victims testified that Petitioner made threats toward them and they believed these

17   threats.  (RT 322-23, 421, 502, 666-67, 739, 912, 936-37, 1050, 1061, 1078, 1143-44, 1624-25.)

18   One incident presented at trial involved Petitioner forcing the victims to play "Russian Roulette"

19   with him.[8]  Although no actual gun was ever recovered, the mere existence of the silver "air-pistol"

20   does not preclude the possibility that a real gun was used in this incident.  The circumstances of the

21   event in question -- what type of gun was used, whether the girls were really scared, whether the

22   incident ever really occurred -- were for the jury to consider.  The record before this Court contains

23   no evidence to suggest the submission of the "air-pistol" into evidence would have influenced the

24   jury's verdict.  Therefore, Petitioner's claim concerning the "air-pistol" does not amount to a <u>Brady</u>

25   violation.

26

27   _____

28        [8] According to the victims' testimony, Petitioner placed a bullet randomly in the chamber of
     a gun, held the gun up to the girls' heads, and pulled the trigger.  (RT 1050-51, 1054-55.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### (3)      Audio Tape

Petitioner also alleges that among the evidence confiscated and suppressed by the police was a tape recording of the victims blackmailing him. (Pet. at 84.) Petitioner has failed to demonstrate this tape actually existed and there is no mention of it in the trial record. Furthermore, despite its exculpatory value, no claim relating to this tape was ever raised on direct appeal. Therefore, this claim fails because Petitioner makes a conclusory assertion lacking any factual detail or reference to the record or any other document.

### b.      Witnesses Tampering

### (1)      Matt Ramsey

The court-ordered post-trial investigator stated that during his interview with Witness Matt Ramsey, he "added, and seemed to imply that the District Attorney gave him testimonial instructions of what to say and how to speak on the stand." (Id. at 85.) Petitioner contends this "clearly" indicates that "this witness did not use his own words in his testimony." (Id.) The investigation report does not give a "clear" indication there was prosecutorial misconduct. Rather, it ambiguously suggests Mr. Ramsey "implied" that the prosecution coached him. It is proper for an attorney to interview and prepare a witness before testimony at trial. People v. Bentley, 131 Cal. App. 2d 687, 690 (1955). The report also states Mr. Ramsey's court statement had already been entered into the record at the time of his testimony. Furthermore, Petitioner makes no claim that Mr. Ramsey's trial testimony was false. Finally, Mr. Ramsey's testimony did not involve the criminal acts themselves. Instead, he testified about a phone conversation he had with one of the victims where she expressed concern about the Petitioner's sexual behavior toward her.

The Court finds no evidence in the record upon which to conclude the statements were false, the prosecutor knew they were false, or the testimony was material. Therefore, Petitioner's prosecutorial misconduct claim relating to Mr. Ramsey's testimony fails under the three-part Agurs/Napue standard.

28

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(2)   **Jessica Z.**

Petitioner contends that at some point during the trial, victim Jessica Z. testified about an incident where her and another victim, Kara P., were tied to the boat and forced to orally copulate Petitioner.  During this testimony, the prosecution called a break when it became "obvious . . . that the [oral copulation by force] could not have taken place if she wasn't untied."  (Pet. at 86.) Petitioner speculates that during the break the prosecutor coerced the victim into testifying she was untied.  (Id.)  Petitioner also points out since Kara P., who was also present at the time of the alleged incident, had previously testified neither one of them was ever untied, the prosecutor must have known Jessica Z.'s testimony was false.  (Id.)

This claim is insufficient because it is based upon pure speculation.  Petitioner was not present during the prosecutor's meeting with Jessica Z., and Petitioner has failed to establish that any coercion took place.  See Woodford, 388 F.3d at 1179.  Furthermore, even though Kara P.'s inconsistent testimony earlier at trial casts doubt upon Jessica Z.'s testimony, it does not eliminate the possibility it is true, either.  "Mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."  Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998); see also Zuno-Arce, 44 F.3d at 1423 (no evidence of prosecutorial misconduct where discrepancies in testimony could as easily flow from errors in recollection as from lies).  In any event, even if the testimony were false, it would not preclude the possibility that Petitioner committed the crime of oral copulation by force.[9]  Therefore, because Petitioner fails to prove the statements were false, the prosecutor knew the statements were false, or the testimony was material, his prosecutorial misconduct claim fails under the three-part Agurs/Napue standard.

c.   **Conclusion**

---

[9]  Under Penal Code § 288a(a), "Oral Copulation is the act of copulating the mouth of one person with the sexual organ or anus of another."  Oral Copulation by force occurs "when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person."  Penal Code § 288a(c).

1      For the foregoing reasons, the California Supreme Court's rejection of Petitioner's

2   prosecutorial misconduct claims was not objectively unreasonable.  See Himes, 336 F.3d at 853.

3      **E.      Relevance of Petitioner's Rights Under Article 36 of the Vienna Convention**

4          **1.      Background**

5

6      Petitioner claims he was deprived of his rights under the Due Process clause of the Fifth and

7   Fourteenth Amendments to the United States Constitution, Article 36 of the Vienna Convention on

8   Consular Relations, December 14, 1969, 21 U.S.T. 77 ("Vienna Convention"), and Penal Code

9   § 834c.  Petitioner alleges he possessed a right to contact the British consulate and the authorities

10  were mandated to notify his consulate that he was being detained.  (Pet. 61-65 (citing Penal Code

11  § 834c(d).)  Petitioner contends while he was incarcerated in Arizona and after he was extradited to

12  California, he was denied access to counsel and the ability to contact his consulate in violation of

13  international treaties which are "the Supreme Law of the Land." (Id. at 65 (citing U.S. Const.

14  art. VI).)

15      Petitioner did not raise this claim in his motion for new trial.  Petitioner did not raise this

16  claim on appeal, and the state supreme court denied the claim on habeas review without citation or

17  comment.  Because there is no reasoned state court opinion which discusses the claim, the Court

18  must conduct an independent review of the record to determine whether the California Supreme

19  Court's summary denial of the claim was an unreasonable application of clearly established federal

20  law.  See Himes, 336 F.3d at 853.

21

22          **2.      Rights Vested by the Vienna Convention**

23      As a threshold consideration, the Court must determine whether the Vienna Convention vests

24  Petitioner with a personal right of constitutional dimension enforceable by an individual in the

25  courts of the United States.  Article 36 of the Vienna Convention states that when a national of one

26  country is detained by authorities in another, the authorities must notify the consular officers of the

27  detainee's home country if the detainee so requests.  Vienna Convention, 21 U.S.T. at 100-01.

28  Article 36 further states that "[t]he said authorities shall inform the person concerned without delay

30

of his rights under this sub-paragraph."  Id.

The Supreme Court has addressed this issue in Sanchez-Llamas v. Oregon. 548 U.S. 331 (2006).  In the majority opinion written by Chief Justice Roberts, the Supreme Court declined to rule on the precise issue of whether the Vienna Convention creates personally enforceable rights of a constitutional dimension, but assumed, "without deciding, that Article 36 does grant [individuals] such rights." Id. at 574.  This suggestion was supported by a dissenting Justice Breyer, joined by Justices Stevens and Souter, who, after a thorough analysis of the issue, also concluded that the Vienna Convention creates such a right.  Id. at 588-96.

This Court has previously chosen to follow the Sanchez-Llamas Court's assumption in another case concerning this Petitioner.  In its Aug. 14, 2006 Order Granting Defendant's Motion for Summary Judgment, in De-Luis-Conti v. Schwarzenegger, Case No. C 04-4110 SBA (pr), this Court, agreeing with Justice Roberts's assumption about the Vienna Convention in Sanchez-Llamas, found the analogous Foreign Prisoner Transfer Treaty, 22 I.L.M. 530 (1983), also created a personal right of constitutional dimension enforceable by an individual in the courts of the United States. Therefore, this Court, in accordance with precedent, finds that the Vienna Convention vests Petitioner with a personal right of constitutional dimension.

**3.      Availability of Relief Under the Vienna Convention**

Nevertheless, Petitioner's Vienna Convention claim does not entitle him to any relief. Petitioner argues he was denied access to the British consulate until after his trial had concluded. Petitioner alleges he was denied access to a telephone for eight months; however, he provides no proof to support his allegation.  In any event, the veracity of this claim is irrelevant for two reasons outlined below.

First, under Teague v. Lane, 489 U.S. 288 (1989), this Court is barred from overturning Petitioner's conviction in habeas proceedings.  In Teague, the Supreme Court, citing Justice Harlan's concurrence in Mackey v. United States, 401 U.S. 667, 692 (1971), held federal courts should not create new rules of constitutional law on habeas review unless the rule falls under one of two exceptions.  Teague, 489 U.S. at 307.  The Teague Court was concerned new rules created on

31

**United States District Court**
For the Northern District of California

1  collateral review would require retroactive application to ensure the consistent administration of

2  justice. Id. at 306-07. Such retroactive applicability, especially in proceedings as common and

3  frequent as habeas corpus, "seriously undermines the principle of finality which is essential to the

4  operation of our criminal justice system." Id. at 309. The Court continued:

> The "costs imposed upon the state by retroactive application of new
> rules of constitutional law on habeas corpus . . . generally far outweigh
> the benefits of this application." In many ways the application of new
> rules to cases on collateral review may be more intrusive than the
> enjoining of criminal prosecutions, for it continually forces the States
> to marshal resources in order to keep in prison defendants whose trials
> and appeals conformed to then-existing constitutional standards.
> Furthermore, as we recognized in Engle v. Isaac, "[s]tate courts are
> understandably frustrated when they faithfully apply existing
> constitutional law only to have a federal court discover, during a
> [habeas] proceeding, new constitutional commands."

Id. at 310 (internal citations omitted). The Court ultimately held that "unless they fall within an

exception to the general rule, new constitutional rules of criminal procedure will not be applicable to

those cases which have become final before the new rules are announced." Id. Under Justice

Harlan's framework, a new rule should be applied retroactively only if it (1) places "certain kinds of

primary, private individual conduct beyond the power of the criminal law-making authority to

proscribe," or (2) "requires the observance of those procedures that . . . are 'implicit in the concept of

ordered liberty.'" Id.

In the instant case, the Court is convinced that neither one of Justice Harlan's exceptions

applies. Petitioner seeks to overturn his state conviction based upon a novel constitutional claim:

that a violation of his Vienna Convention rights mandates an invalidation of his state conviction.

Because this is a new constitutional issue, however, this Court is barred from granting such relief in

habeas proceedings under Teague.

Even if the Court were to disregard Teague and consider Petitioner's claim on the merits, it

would still be unsuccessful because Petitioner fails to demonstrate how being able to communicate

with the British consulate would have altered his trial's outcome. Petitioner claims the British

consulate possessed lists of attorneys on both sides of the Atlantic who could have tried his case

32

**United States District Court**

For the Northern District of California

1    more effectively than his appointed council.  The Court finds such an argument unavailing.  Even

2    Petitioner himself admits his assertion "is totally argumentative as to what might or might not have

3    happened."  (Pet. at 64.)  As explained above, Petitioner's counsel was competent and employed an

4    informed and objectively reasonable legal strategy.  See supra Discussion Part III.A.3.

5          For the aforementioned reasons, the California Supreme Court's rejection of Petitioner's

6    Vienna Convention claim was objectively reasonable.  Himes, 336 F.3d at 853.

7          **F.     Judicial Misconduct**

8                 **1.     Background**

9          Petitioner lists numerous instances in which he believes the trial judge acted improperly

10   during and after his trial.  First, Petitioner claims the trial judge should have dismissed the charges

11   against him when the judge discovered that his Vienna Convention rights were violated.  (Pet. at 97.)

12   Second, he contends the judge imposed an "impossible amount of bail[,]" $1,000,000, which

13   amounted to cruel and unusual punishment.  (Id.)  Third, he claims that he was "marched from the

14   new Court [sic] house to the Old Court [sic] house through the streets of Napa in chains under heavy

15   escort in front of the general public and potential jurors."  (Id. at 98.)  Fourth, he claims he was

16   prejudiced at trial based upon the judge's decision to allow two police officers to sit directly behind

17   him.  (Id.)  Fifth, he claims he was denied counsel at his arraignment.  (Id. at 97.)  Sixth, he claims

18   the judge imposed his sentence without listening to anything said at the hearing.  (Id. at 100.)

19   Seventh, he claims the judge denied his new trial motion without reviewing it.  (Id. at 99)  Eighth, he

20   claims he was denied the effective assistance of counsel in preparing and presenting his new trial

21   motion.  (Id.)  Ninth, he claims the fine imposed by the court amounts to cruel and unusual

22   punishment.  (Id.)  Tenth, he claims the judge imposed a sentence which also amounts to cruel and

23   unusual punishment.

24

25          Petitioner did not raise this claim in his motion for new trial.  Petitioner did not raise this

26   claim on appeal, and the state supreme court denied the claim on habeas review without citation or

27   comment.  Because there is no reasoned state court opinion which discusses the claim, the Court

28   must conduct an independent review of the record to determine whether the California Supreme

33

Court's summary denial of the claim was an unreasonable application of clearly established federal law.  See Himes, 336 F.3d at 853.

### 2.  **Applicable Federal Law**

A claim of judicial misconduct by a state judge in the context of federal habeas review does not simply require the federal court determine whether the state judge committed judicial misconduct; rather, the question is whether the state judge's behavior "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted), cert. denied, 517 U.S. 1158 (1996).

Federal habeas relief is limited to those instances where there is proof of actual bias, or of a possible temptation so severe that one might presume an actual, substantial incentive to be biased. See Del Vecchio v. Ill. Dep't of Corr., 31 F.3d 1363, 1380 (7th Cir. 1994) (en banc), cert. denied, 514 U.S. 1037 (1995).  There is "a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47 (1975).   The petitioner bears the burden of overcoming this presumption in a judicial misconduct case.  See id.

Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. See Liteky v. United States, 510 U.S. 540, 555 (1994).  "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id.

### 3.  **Analysis**

#### a.  **Rights Under Vienna Convention and Penal Code § 834c**

Petitioner claims the trial court should have dismissed his case when it learned his rights under the Vienna Convention and Penal Code § 834c were violated.  As mentioned above, under Teague, 489 U.S. 288, Petitioner's conviction cannot be overturned on Vienna Convention grounds on habeas review.  See supra Discussion Part III.D.3.  Furthermore, Petitioner fails to provide

34

evidence he was denied the ability to contact his consulate via phone during his incarceration. Petitioner also fails to meet his burden of establishing his trial was rendered fundamentally unfair by the Court's refusal.  He has not shown that contacting his consulate would have changed his trial in any significant way.  Petitioner was represented by counsel who provided effective assistance. Therefore, Petitioner's claim fails.

### b.   Unreasonably High Bail

Petitioner contends the trial judge set an unreasonably high bail which amounted to cruel and unusual punishment.  "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Bail Clause requires, when bail is set it not be excessive, but it does not require that bail be available in all cases.  See United States v. Salerno, 481 U.S. 739, 752-54 (1987); Carlson v. Landon, 342 U.S.524, 545 (1952).  "Neither the Supreme Court nor [the Ninth Circuit has] held that the Clause is incorporated against the States." Galen v. County of Los Angeles, 477 F.3d 652, 659 (9th Cir. 2007).  The Ninth Circuit, however, has assumed without deciding that the Clause is incorporated against the States.  Id.

According to the record, Petitioner's bail was set at one million dollars.  Petitioner's bail was reasonable, because he was a flight risk.  After he was initially charged, Petitioner fled to Great Britain and subsequently to Arizona where he was eventually captured and extradited to California. (Answer at 29.)

Under Salerno, the State's proposed conditions of release or detention may not be "'excessive' in light of the perceived evil."  Additionally, bail need not be available in all cases.  Id.  The evil the State sought to prevent in this case was a potentially dangerous individual's escape.  Based upon Petitioner's previous flight, the probability of such an escape was high.  Therefore, setting an extremely high bail or no bail at all would have been appropriate in Petitioner's case.  Nevertheless, Petitioner contends because his passport had been confiscated, his flight risk was "not an issue." (Pet. at  97.)  While not having a passport might have significantly hindered Petitioner's ability to flee to another country, he still had the ability to hide within the United States.  Petitioner had already evaded authorities for a period of time while in Arizona and there was no reason for the

court to think he could not do so again.  Furthermore, a high bail would have had little or no effect upon the outcome of his trial.  Thus, because Petitioner fails to demonstrate the high bail imposed by the trial court rendered his trial fundamentally unfair, his second claim fails.

### c.    <u>Shackling</u>

Petitioner claims he was marched through the streets in bondage and under heavy escort, and this public display contaminated the jury pool.  In deciding whether the trial court's allegedly erroneous decision to shackle violated due process, a federal habeas court should "determine whether what [the jurors] saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial."  <u>Holbrook v. Flynn</u>, 475 U.S. 560, 572 (1986).  Visible shackling during trial is so likely to cause a defendant prejudice that it is permitted only when justified by an essential state interest specific to each trial.  <u>See</u> <u>Rhoden v. Rowland</u>, 172 F.3d 633, 636 (9th Cir. 1999).  Where care is taken to ensure that a defendant's shackling is not visible to the jury in the courtroom, however, prejudice is not presumed.

Allegedly, the jury in the present case only briefly saw Petitioner shackled while in transport. This cannot raise a presumption of prejudicial error.  <u>See</u> <u>Ghent v. Woodford</u>, 279 F.3d 1121, 1133 (9th Cir. 2002) (no prejudice from jury's brief glance of shackles outside of courtroom while petitioner was being transported).  Furthermore, Petitioner has proffered no factual support for his claim.  Accordingly, Petitioner's claim fails.

### d.    <u>Security Arrangements</u>

Petitioner claims he was prejudiced at trial because the trial judge allowed two police officers to sit directly behind him during the entire trial.

"Courtroom security arrangements at trial may be so prejudicial as to deprive a criminal defendant of a fair trial in violation of due process."  <u>See</u> <u>Holbrook</u>, 475 U.S. at 569.  "To be sure, it is possible that the sight of a security force within the courtroom might under certain conditions 'create the impression in the minds of the jury that the defendant is dangerous and untrustworthy.'"  <u>Id.</u> (citations omitted).

A federal court's review of security arrangements is very limited.  <u>Ainsworth v. Calderon</u>,

United States District Court

For the Northern District of California

138 F.3d 787, 797 (9th Cir. 1998), <u>amended</u>, 152 F.3d 1223 (9th Cir. 1998).  All it may do is look at the scene presented to the jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial.  <u>See</u> <u>id.</u>  If the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.  <u>See, e.g.</u>, <u>Holbrook</u>, 475 U.S. at 569 (presence of four uniformed state troopers did not unconstitutionally deprive defendant of a fair trial); <u>Williams v. Woodford</u>, 384 F.3d 567, 587-89 (9th Cir. 2004) (presence of four uniformed marshals and several other "plain-clothed" guards at trial not inherently prejudicial; defense counsel's statements implying extraordinary security measures cannot support a claim that the security measures at trial undermined the presumption of innocence); <u>Ainsworth</u>, 138 F.3d at 797 (presence of four, and occasionally six, armed sheriff's deputies at trial was not inherently prejudicial for two defendants charged with capital murder); <u>King v. Rowland</u>, 977 F.2d 1354, 1358 (9th Cir. 1992) (upholding ratio of three armed guards to single defendant).

In the instant case, the State's use of two police officers for security was justified based upon the circumstances at trial.  Petitioner had allegedly threatened to harm or kill the victims multiple times.  Petitioner had also fled from authorities prior to his eventual capture.  It is reasonable to suggest that at trial, where the victims were called to testify, increased security was necessary to ensure they were kept safe.  Therefore, Petitioner's excessive security claim fails.

### e.   **Judicial Error**

#### (1)   **Denial of Counsel at Arraignment**

Petitioner claims he was deprived of counsel at his arraignment in violation of his Sixth Amendment right to counsel.  His claim is contrary to the record, which shows on December 13, 1999, he was arraigned, requested the appointment of counsel, and was provided with a public defender.  Petitioner did not enter his plea until December 14, 1999.  (Resp't Ex. B, vol. 1 at 112.) Accordingly, Petitioner was not deprived of any rights and his claim fails.

#### (2)   **Judicial Indifference**

1
2
3
4

Petitioner alleges that the judge did not listen to anything that occurred at his sentencing hearing.  The record contradicts this claim.  The transcript of the sentencing hearing shows the judge actively participated in it and provided clear, rational bases for the sentences he imposed.  (Resp't Ex. E, vol. 62 at 96-113.)  Therefore, Petitioner's claim fails.

5
6
7
8
9
10
11
12

Petitioner also contends the judge denied his motion for a new trial without even reading the motion's supporting documents.  Under <u>Withrow</u>, there is "a presumption of honesty and integrity in those serving as adjudicators."  421 U.S. at 47.  By summarily alleging that the trial judge did not pay attention at his new trial hearing, Petitioner fails to meet his burden of overcoming this presumption.  Furthermore, the trial record indicates the judge did in fact read Petitioner's motion:

> Just for the record, the Court would state that I have read the motion
> for a new trial that was filed by the defendant, and I've also read the
> People's opposition to the Defendant's motion for new trial, which was
> filed on April 13th.

13
14

(Resp't Ex. E, vol. 57 at 3.)  Petitioner fails to provide any evidence to suggest there was any judicial misconduct or that actual prejudice occurred.  Therefore, his claim fails.

15

**(3)** **Denial of Right to Counsel**

16
17
18
19
20
21

Petitioner claims the judge denied his right to counsel for preparing and presenting his new trial motion.  Petitioner's claim is contrary to the record.  On August 9, 2000, the Napa County Superior Court issued an order granting Petitioner's request for advisory counsel.  (Resp't Ex. B, vol. 3 at 597-601.)  A minute order dated August 11, 2000 shows the court appointed David Barry, Esq., who was to answer any questions that Petitioner had during the preparation of his new trial motion. Petitioner's claim thus has no factual basis and must necessarily fail.

22

**(4)** **Unreasonable Fine Imposed**

23
24
25
26
27
28

Petitioner next claims that the fine imposed by the judge amounts to cruel and unusual punishment, because he is allegedly unable to pay it.  The Excessive Fines Clause of the Eighth Amendment prohibits the government from imposing "excessive fines" as punishment.  <u>See</u> U.S. Const. amend. VIII.  In <u>United States v. Bajakajian</u>, 524 U.S. 321 (1998), the Supreme Court established the standard for evaluating challenges under the Excessive Fines Clause:  "[A] punitive

38

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." Id. at 334.  The appropriate factors to consider on an excessive fines claim are (1) the severity of the offense and its relation to other criminal activity, (2) the maximum criminal penalty faced, and (3) the harm caused by the offense.  United States v. Mackby, 339 F.3d 1013, 1016 (9th Cir 2001) (citing Bajakajian, 524 U.S. at 337-39).

According to the sentencing transcript, the Court imposed a $5,000 restitution fine under Penal Code § 1202.4.[10]  (Resp't Ex. E, vol. 62 at 112.)  This statute did not allow the trial court to waive the fine based solely upon Petitioner's ability to pay it.  Penal Code § 1202.4(c).  The court also imposed eight separate $50 dollar fines for lab analysis fees under § 11372.5 of the Health and Safety Code.  (Id.)  These fines are primarily designed to pay for the costs incurred by the State rather than to punish a defendant.  See Health & Safety Code § 11372.5(b).[11]  The Court must consider whether the cumulative amount of $5,400 is "grossly disproportionate" in light of the severity of the offense and its relation to other criminal activity, the maximum criminal penalty faced, and the harm caused by the offense.  Mackby, 339 F.3d at 1016 (citing Bajakajian, 524 U.S. at

---

[10]  "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record."  Penal Code § 1202.4(b).  "A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine."  Id. § 1202.4(c).

[11]  Under § 11372.5(b) of the Health and Safety Code:

> The county treasurer shall maintain a criminalistics laboratories fund.
> The sum of fifty dollars ($50) shall be deposited into the fund for
> every conviction [under certain enumerated statutes].  Moneys in the
> criminalistics laboratories fund shall, except as otherwise provided in
> this section, be used exclusively to fund (1) costs incurred by
> criminalistics laboratories providing microscopic and chemical
> analyses for controlled substances, in connection with criminal
> investigations conducted within both the incorporated or
> unincorporated portions of the county, (2) the purchase and
> maintenance of equipment for use by these laboratories in performing
> the analyses, and (3) for continuing education, training, and scientific
> development of forensic scientists regularly employed by these
> laboratories.

**United States District Court**
For the Northern District of California

337-39). Petitioner's crimes are serious felonies punishable by anywhere from one year to life in prison. Under Penal Code § 1202.4, the maximum fine Petitioner faced for each of his felony convictions was $10,000.[12] Petitioner received a $5,000 fine, only half the maximum allowed by statute. In this case, the harm caused was extremely high, as indicated by the sentencing judge's imposition of the upper term of imprisonment on a number of Petitioner's counts. (Resp't Ex. E, vol. 62 at 101-10.) Taking into consideration the relevant factors, including Petitioner's alleged inability to pay, it cannot be said his $5,400 restitution fine is grossly disproportionate. Petitioner, through his actions, has caused great harm to the victims. Accordingly, it is appropriate for him to pay reasonable restitution. Because his restitution and laboratory fees are not "grossly disproportionate" to his crimes, the excessive fines claim fails.

### (5)    Cruel and Unusual Punishment at Sentencing

Petitioner claims the prison sentence imposed by the trial judge amounts to cruel and unusual punishment. A criminal sentence that is not proportionate to a crime for which a defendant is convicted violates the Eighth Amendment. Solem v. Helm, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment). For the purposes of review under 28 U.S.C. § 2254(d)(1), it is clearly established that "[a] gross proportionality principle is applicable to sentences for terms of years." Lockyer v. Andrade, 538 U.S. 63, 72 (2003). But the precise contours of the principle are unclear and "applicable only in the 'exceedingly rare' and 'extreme' cases." Id. at 73 (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)). "[T]he principle reserves a

---

[12]   Under § 1202.4(b)(1) of the Penal Code:

> The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall be not less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony, and shall not be less than one hundred dollars ($100), and not more than one thousand dollars ($1,000), if the person is convicted of a misdemeanor.

United States District Court

For the Northern District of California

1   constitutional violation for only the extraordinary case."  Id. at 76.

2        The Eighth Amendment does not require strict proportionality between crime and sentence.

3   Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  Ewing v.

4   California, 538 U.S. 11, 24-25 (2003) (quoting Harmelin, 501 U.S. at 1001).  Substantial deference

5   is granted to a legislature's determination of the types and limits of punishments for crimes.  See

6   United States v. Gomez, 472 F.3d 671, 673-74 (9th Cir. 2006) (finding Congress's decision to grant

7   a reprieve from statutory minimums only to certain categories of criminal defendants does not

8   violate the Eighth Amendment).  The United States Supreme Court has held it is not cruel and

9   unusual punishment to sentence a one-time offender to mandatory life imprisonment without parole

10  for possessing 672 grams of cocaine.  Harmelin, 501 U.S. at 1009.

11       Here, Petitioner was convicted of multiple offenses which occurred on separate occasions.

12  His crimes are arguably more serious than the one at issue in Harmelin.  Despite the fact the trial

13  court stayed sentencing on fifteen counts, Petitioner is currently serving a term of 121 years-to-life

14  in prison.  In light of the Supreme Court's Eighth Amendment jurisprudence, it cannot be said

15  Petitioner's sentence on multiple counts amounts to cruel and unusual punishment.  Therefore, his

16  claim fails.

17                              **(6) Conclusion**

18       Accordingly, based on the foregoing discussions, the California Supreme Court's rejection of

19  all of Petitioner's judicial misconduct claims was not an unreasonable application of clearly

20  established federal law.  See Himes, 336 F.3d at 853.

21                               **CONCLUSION**

22       For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk of

23  the Court shall enter judgment and close the file.

24       IT IS SO ORDERED.

25  DATED:  8/5/08

26                                        *Saundra B Armstrong*

27                                   SAUNDRA BROWN ARMSTRONG
                                     United States District Judge
28